ANTHONY FARAGO, Respondent, v. THOMAS CRIMMINS BURKE, Defendant, Impleaded with JAMES MCTIERNAN, Appellant.*

First Department, January 13, 1933.

*Louis Susman* of counsel [*William Levin* with him on the brief; *McLaughlin, Levin & Spallone*, attorneys], for the appellant.

*Osborne A. McKegney*, for the respondent.

MARTIN, J. In this action the plaintiff seeks to compel specific performance of a contract to sell real estate alleged to have been made between him and the defendant, appellant, James McTiernan, and to enforce an escrow agreement made with Mr. Thomas Crimmins Burke, the attorney for the defendant. A judgment was rendered against both defendants.

The plaintiff and defendant, appellant, were adjoining landowners. Through an error the plaintiff built a two-family house partly on the plot owned by the defendant, appellant. Being anxious to acquire said land, plaintiff thereafter negotiated for the purchase of same. When the negotiations were completed, the plaintiff and defendant, appellant, met at the office of the defendant Burke, who was at that time acting as the attorney for McTiernan. A contract was prepared by Burke and submitted for signature to McTiernan and to plaintiff's witness Andrew T. McKegney. The plaintiff expressed his satisfaction with the contract, but asked for an opportunity to have his attorney examine it, to determine whether it embodied in proper legal form that which the parties had agreed upon at the office of the attorney.

One copy of the contract was signed by McTiernan, and left in escrow with the defendant Burke until the plaintiff should have his copy examined by his attorney and return it signed by him to defendant Burke to be then exchanged for the copy signed by the defendant, appellant, McTiernan.

That it was agreed that the contract signed by the defendant

McTiernan was to be held in escrow by the defendant Burke clearly appears from the testimony, a part of which is as follows: " Q. Then what did he do with it [the contract]? A. And I said to Mr. Andrew McKegney, I says to him, ' Everything is O. K. in the contract, but,' I says, ' will there be any objection there to have one of his contracts looked over by an attorney? ' He said ' All right, McTiernan, anything '— McKegney turns around and says, ' All right, have Mr. McTiernan sign this contract and we will leave it in escrow now. It will be back here tomorrow,' he says, ' with Mr. Farago's contract and we will exchange contract.' Mr. Burke turns around and he says, ' No, you can't come down tomorrow, because I'm going away for the week-end ' which the following Monday was Labor Day. ' You come down here on Tuesday and everything will be satisfactory, everything will be O. K.' All right. We shook hands and we walked out. Mr. McTiernan, Mr. McKegney and I walked as far as the corner. There we shook hands with Mr. McTiernan. He says to me, ' Well, Farago, I'm glad the thing is all over. I'm glad the whole thing is satisfactory.' * * *."

In accordance with the escrow agreement, the plaintiff and his witness McKegney thereafter went to the office of the defendant Burke with the copy of the contract signed by the plaintiff, and tendered it to Burke with a demand that he deliver to them the copy signed by the defendant, appellant, McTiernan. The defendant Burke thereupon stated to the plaintiff and his witness that he was sorry, but that the defendant, appellant, had come to his office and destroyed the contract. The plaintiff's witness, McKegney, then stated that the responsibility was with Burke, because the contract was left with him in escrow. Formal demand in writing was thereafter made upon both defendants to perform the contract, the escrow agreement on the part of the defendant Burke, and the contract to sell the real property on the part of the defendant, appellant, McTiernan. On the day set in the written demand for the performance of the contracts, neither of the defendants appeared, although the plaintiff did appear and was ready, able and willing to perform. This action was thereupon commenced against both defendants.

The fact that all the parties met at the office of the attorney for the defendant, appellant, where the defendant signed a written contract, is significant as indicating that the plaintiff as purchaser, and the defendant, appellant, as seller, had agreed upon all the terms of the sale, and that the purpose of the meeting was to complete the sale and reduce the oral contract to writing. That

is also indicated by the fact that the contract, after being reduced to writing, was read and the plaintiff stated it was satisfactory to him.

The court in compelling Burke to perform is not specifically enforcing a contract to sell real property to which Burke is a party, but is simply compelling him to deliver to plaintiff the possession of a contract to which plaintiff has a legal right.

In *Stanton* v. *Miller* (58 N. Y. 192) the court passed upon a similar proposition and said: " If the deed of June 29, 1870, was deposited *in escrow* strictly according to the terms of the contract of June 23, 1870, Mrs. Miller could not afterward recall it; and the grantees, on showing that Mr. Stanton had performed his contract, would be entitled to its possession as a muniment and evidence of their title; and the court, in the exercise of its equitable jurisdiction would compel its delivery."

" The making of a deed *in escrow* presupposes a contract pursuant to which the deposit is made; it implies an arrangement between the grantor and the party who is to perform the condition; and when the one has agreed to convey when the condition is performed, and the other to perform the condition, and the deed has been placed *in escrow*, to carry out the purpose as defined in the contract or arrangement between the parties, without any reservation, express or implied, on the part of the grantor when the deposit is made, of a right to recall the deed, then the authorities are that the delivery cannot be revoked by the party making it, so long as there is no breach by the other of the condition upon which it was made."

In *Davis* v. *Clark* (58 Kan. 100) the court said: " Contrary to the view of the plaintiffs in error, the depositary of an escrow is regarded as an agent of both obligor and obligee; and he can neither return the deed or other instrument to the former without the latter's consent, nor save upon fulfillment of the agreed conditions, deliver it to the latter without the former's consent. * * * According to these decisions, the depositary of an escrow is not the agent of the depositor, merely, and the agreement of deposit cannot be rescinded by him alone and the escrow withdrawn at his will."

The case of *Cagger* v. *Lansing* (43 N. Y. 550) is not an authority in support of the contention of the appellant. In that case the plaintiff sought to enforce a parol contract for the sale of land, which was unenforcible. An effort was there being made to compel the purchaser to pay the purchase money upon the ground that there had been a sale of land to said purchaser. There was no writing or other enforcible contract signed by the purchaser. The Statute of Frauds was there held to be a good defense. The purchaser, therefore, escaped liability because he had not signed the contract.

The difference between that case and this is so apparent that further comment seems unnecessary. Here the party to be charged by the contract signed a written contract and delivered it in escrow to an attorney to be handed to the purchaser when he signed and delivered the copy which had been delivered to him. In *Cagger* v. *Lansing* (*supra*) it was held that a delivery in escrow did not bind the purchaser although he verbally promised to perform the condition. Until performance and acceptance by the purchaser, he was at liberty to abandon the contract.

In *Mechanics' National Bank* v. *Jones* (76 App. Div. 534; affd., 175 N. Y. 518) the court held that when a party has complied with the conditions and obligations under which the deposit is made, he becomes entitled to the property deposited for his benefit.

A party to whom a contract, deed or other instrument is delivered in escrow is in a sense a trustee for both parties; he is not the agent of either party but of both, and can act only in accordance with the escrow agreement. Here it was the intention of the parties that when the plaintiff returned his signed copy of the contract to Burke (after it had been examined by plaintiff's attorney as agreed by the parties) Burke would accept that copy and deliver to plaintiff the copy which he held in escrow signed by the defendant, appellant, McTiernan.

In view of the testimony and the written evidence, the court properly held that the plaintiff was entitled to judgment. The judgment, therefore, should be affirmed, with costs.

MERRELL and O'MALLEY, JJ., concur; FINCH, P. J., and TOWNLEY, J., dissent and vote for reversal and dismissal of the complaint.

FINCH, P. J. (dissenting). The question here presented is one of law, namely, whether a binding escrow agreement arose out of the following facts: The terms of a contract of sale of certain realty having been agreed upon, and reduced to writing, one copy of the writing was signed by the vendor and handed to his attorney. The vendee then stated that everything was satisfactory in the contract, but he would like to have the contract looked over by his attorney before signing. On his behalf it was suggested that the copy signed by the vendor be left with his attorney " in escrow," to be exchanged the following Tuesday for copy signed by the vendee. To this suggestion the vendor acquiesced. Prior to the delivery by the vendee of copy signed by him, the vendor withdrew from his attorney the copy of the agreement bearing his signature, and destroyed the same. The vendee sued the vendor and his attorney to compel specific performance of both the alleged escrow agreement and contract of sale.

The writing signed by the vendor having been destroyed by him before delivery, the Statute of Frauds is a bar to an action upon the contract of sale unless the destruction of the writing was violative of some right of the vendee. Any such right must be found in the alleged escrow agreement.

Assuming that an escrow agreement may be implied from the aforesaid facts, it would not be a valid contract, because of the lack of the necessary element of consideration. The vendee had not satisfied the Statute of Frauds by affixing his signature to a copy of the agreement; nor had he delivered such a writing in escrow. The vendee, therefore, was under no legal obligation, for, as was said in *Cagger* v. *Lansing* (43 N. Y. 550): " No one will contend that a contract for the sale of land, executed by the vendor, is binding upon the purchaser unless the contract is delivered to and accepted by the purchaser as a valid subsisting contract. A delivery in escrow cannot bind the purchaser, although he verbally promises to perform the condition. Until performance and acceptance by the purchaser, he is at liberty to abandon the contract." What really happened was that until acceptance by the vendee there was an offer to make a contract or at the most a unilateral contract which may always be withdrawn or rescinded before the other side accepts. Until acceptance there was no obligation. No other consideration appears. Lacking consideration, the so-called escrow agreement failed to ripen into a contract, and the vendor had the right to withdraw at any time before the contemplated exchange of writing was effected.

In *Mechanics' National Bank* v. *Jones* (76 App. Div. 534; affd., 175 N. Y. 518) HISCOCK, J., in discussing the general principles which govern a deposit of documents in escrow, and writing for the court said: " If the deposit is made under and upon conditions to be fulfilled by another and without original consideration, it is doubtless true that the person making the same may revoke his proposition at any time before the opposite party has complied with the conditions to be by him performed."

Also there was here present no mutuality of obligation. The suit is in equity for specific performance. Assume, for example, that the plaintiff, after showing the contract to his lawyer, had declined to purchase. The defendant then would have had no redress. Hence, in addition to there being no consideration, there was also no mutuality of obligation.

It follows that the judgment appealed from should be reversed, with costs, and the complaint dismissed.

TOWNLEY, J., concurs.

Judgment affirmed, with costs.