ANTHONY FARAGO, Respondent, *v.* THOMAS C. BURKE, Defendant, and JAMES McTIERNAN, Appellant.

(Argued June 12, 1933; decided July 11, 1933.)

*Louis Susman, William Levin* and *Knowlton Durham* for appellant.

*Osborne A. McKegney* for respondent.

. CRANE, J.   The error in this case has been in thinking that there was a contract — a meeting of the minds on the sale of real property which had been reduced to writing. For instance, the respondent in his brief says, " the record disclosed ample evidence to support the finding that the parties had entered into a contract." Here we differ with him and with the lower courts. There was no contract binding on both parties before the grantor withdrew from the bargain.

James McTiernan agreed to sell to Anthony Farago certain premises known as lots Nos. 577 and 578 of the Van Cortlandt estate, in the Bronx, New York city, for $15,000 — $5,000 payable in cash on the delivery of the deed and $10,000 by giving a second mortgage.

On the 4th of September, 1931, the parties met at the office of Thomas C. Burke, the grantor's lawyer, where

copies of the contract of sale were drawn up and the original signed by McTiernan. This was handed to Farago, or his representative, a real estate dealer, named McKegney, to examine, but was not signed or executed by Farago. He wanted the advice of a lawyer and asked the privilege of taking a copy for that purpose. The arrangement was then made that Farago would come back Tuesday of the next week to exchange contracts. Mr. McKegney testified that he handed the contract back to Mr. Burke, saying, "I am handing this contract to you in escrow and I will be here and we will exchange contracts on Tuesday morning." The plaintiff gave as his reason for refusing to sign the contract, "I says to him ' everything is O. K. in the contract but will there be any objection there to have one of his contracts looked over by an attorney?'" By the following Tuesday McTiernan had changed his mind, and tore up the contract.

This action for specific performance is founded upon the claim of a completed contract of sale to be held in escrow by Burke until Tuesday, from which the grantor could not withdraw.

One cannot enforce a contract not binding upon himself. (*Kohart* v. *Boyle*, 140 App. Div. 856.)

"No one will contend that a contract for the sale of land, executed by the vendor, is binding upon the purchaser unless the contract is delivered to and accepted by the purchaser as a valid subsisting contract. A delivery in escrow cannot bind the purchaser, although he verbally promises to perform the condition. Until performance and acceptance by the purchaser, he is at liberty to abandon the contract." (*Cagger* v. *Lansing*, 43 N. Y. 550, p. 553.)

There was no contract, no meeting of the minds upon the agreement as set forth in the instrument signed by McTiernan. Farago was apparently satisfied with it, but he was not sure, he wanted to inquire further. The

main features he no doubt understood and agreed to, nevertheless he was not ready to sign and desired time for a lawyer's advice. That he was not bound by anything which took place in Burke's office is granted. He was not under any legal obligations to appear the following Tuesday and exchange contracts. Had the lawyer found objections, Farago could have refused to make the contract or he could have dropped the matter without any reason or objection. Therefore, it is a misnomer to say that a contract to sell this property was delivered to Burke in escrow. There was no contract, oral or in writing. A contract assumes an agreement, a meeting of the minds, on the thing to be done. McTiernan had given his consent, but not Farago, so that the writing was not a contract itself, nor the evidence of any oral agreement of the parties. They would agree perhaps on the Tuesday following, but had not done so up to the time McTiernan withdrew his offer.

The plaintiff, no doubt in perfect good faith, desired to hold the defendant, while he would be free to do as he pleased, in the few following days. Such facts do not make contracts. Had Farago accepted the contract signed by McTiernan, thus evidencing a completed agreement (*Worrall* v. *Munn*, 5 N. Y. 229; *300 West End Ave. Corp.* v. *Warner*, 250 N. Y. 221), or tendered his signed copy, or in any other effectual way signified his acceptance and consent, before the withdrawal of the offer by McTiernan, the latter would have been obligated to sell on the terms and conditions stated in the paper signed by him. (*Dietz* v. *Farish*, 79 N. Y. 520; *Mechanics' Nat. Bank* v. *Jones*, 76 App. Div. 534; affd., 175 N. Y. 518; *Petterson* v. *Pattberg*, 248 N. Y. 86; *Cagger* v. *Lansing*, 43 N. Y. 550; *Kohart* v. *Boyle*, 140 App. Div. 856.) The court said in the *Mechanics' National Bank* case: " If the deposit is made under and upon conditions to be fulfilled by another and without original consideration, it is doubtless true that the person making the same may

revoke his proposition at any time before the opposite party has complied with the conditions to be by him performed " (p. 545).

The use of the word " escrow " by Mr. McKegney, when he handed the proposed contract back to Burke, did not transform the facts. Calling an act an escrow does not necessarily make it such. Whether the holding of a document be under an escrow agreement depends upon that agreement. The word is often used for a holding which has none of the effects which the law attributes to it. The law makes the depositary a trustee for both parties (*Stanton* v. *Miller*, 58 N. Y. 192); it imposes upon him a duty not to deliver the escrow to any one except upon strict compliance with the conditions imposed, and even subjects him to damages for his failure; it makes the deed or other instrument irrevocable. (*Mechanics' Nat. Bank* v. *Jones, supra.*) The facts of this case do not show that Burke, the grantor's lawyer, undertook any such obligations. He took the contract back when McKegney handed it to him and gave Farago a few days to make up his mind whether he would agree to it. In our opinion this constituted an offer on stated terms which could be withdrawn before acceptance. Had a contract actually been made by these parties, and then delivered in escrow for the performance of some condition stated in the contract, we might have a case where the grantor could not back out before the time given for performance (*Stanton* v. *Miller, supra*), but in this case a contract is lacking.

The judgments should be reversed and the complaint dismissed, with costs in all courts.

POUND, Ch. J., LEHMAN, KELLOGG, O'BRIEN and CROUCH, JJ., concur; HUBBS, J., not sitting.

Judgments reversed, etc.