WARD ET AL. *v.* NATIONAL BANK OF PAULDING.

(No. 19318—Decided November 30, 1965.)

*Messrs. Marsh & Crowley,* for plaintiffs.
*Messrs. Weaner, Hutchinson & Zimmerman* and *Mr. Harvey E. Hyman,* for defendant.

HITCHCOCK, J. Plaintiffs are designated as Howard R. Ward and Sherwood Hotel, Inc. There is, however, no evidence that Howard R. Ward, as an individual, has had any interest in the subject of this action since December 18, 1962, when he assigned all interest he had in same to the Sherwood Hotel, Inc.,

other than to act in person as agent for said hotel corporation. Accordingly he may be dismissed from this action as not being a real party in interest.

On October 22, 1965, plaintiff hotel filed its motion for summary judgment supported by exhibits and affidavits.

On November 2, 1965, the day before this motion was heard defendant filed the affidavit of Edward Mendelson in opposition to said motion.

On November 9, 1965, while plaintiff hotel's motion was under consideration, defendant filed its motion for summary judgment which motion was heard November 29, 1965.

Attached to plaintiff's motion were original and other documents, dated and described as follows:

December 10, 1962. Written agreement executed with the formalities of a deed between Edward and Frances Mendelson, sellers, and Howard R. Ward, buyer, for sale of land, building and equipment of the Sherwood Hotel at Sherwood (Defiance County) Ohio. This agreement in considerable detail specifying terms and conditions, installs the buyer as hotel manager and provides that certain funds and instruments be deposited, within ten days, with the National Bank of Paulding, as escrow agent; that as manager buyer is to retain all net income from the operation of the hotel as and for his compensation from date to "termination of the escrow agreement." Also it contains these provisions:

"Said escrow agreement shall be terminated upon the receipt of the (buyer) of the transfer of the liquor permit belonging to (sellers) to (buyer), his heirs or assigns."
and

"The (buyer) agrees that in event the escrow agreement for the sale of said premises should fail then (buyer) shall pay (seller) the sum of * * * ($600.00) or an inventory equivalent to * * * ($600.00)."

December 18, 1962. Assignment by Howard R. Ward (buyer) of his interest in agreement of purchase and sale dated December 10, 1962, to The Sherwood Hotel, Inc., in written instrument executed and acknowledged with the formalities of a deed.

December 18, 1962. Escrow agreement signed by sellers and buyer "Howard R. Ward, as agent for the Sherwood Hotel, Inc., and as an individual." Paragraph 4 of this document

reads: "This transaction is conditioned upon the transfer of the liquor permit held by Frances Mendelson to the Sherwood Hotel, Inc., and should the permit fail to be transferred within sixty (60) days from this date, then you shall redeliver to each of the parties the items by them delivered to you and this agreement of escrow shall be null, void, and of no effect." Immediately below the signatures of this escrow agreement it is recited: "Received of Frances Mendelson, Edward Mendelson, and Howard R. Ward, this 18 (in pen) day of December, 1962, a deed, bill of sale, list of creditors, note and Six Thousand Four Hundred Dollars ($6,400.00) to be held and delivered or redelivered in accordance with the foregoing instructions. THE NATIONAL BANK OF PAULDING By /s/ O. E. White TITLE /s/ Cashier."

March 2, 1963. Written agreement of sellers and buyer addressed to National Bank of Paulding stating: "We * * * have agreed to extend the escrow agreement deposited with you on December 18, 1962, for a period of thirty (30) days." Whereupon follow certain amendments to the December 18 escrow agreement, concluding with a final paragraph: "The escrow agreement deposited with you on December 18, 1962, shall remain in effect and this shall be considered as an addendum thereto." Immediately below the signature on this document it is stated: "Received of Frances Mendelson and Edward Mendelson this 4th (in pen) day of March, 1963, a note in the amount of $690.59 to be held and delivered or redelivered in accordance with the foregoing instructions. NATIONAL BANK OF PAULDING By /s/ R. M. Medaugh TITLE /s/ Asst. Cashier."

March 20, 1963, 4:35 p. m. Copy of telegram sent at Bowling Green, Ohio, to National Bank of Paulding reading, "Make no disbursements from escrow account until authorized. Howard R. Ward, Individually and for the Sherwood Hotel, Inc."

March 27, 1963. Copy of letter from Howard R. Ward, Individual and for Sherwood Hotel, Inc., to National Bank of Paulding, reading:

"Demand is herewith made upon you for the immediate payment of $5,709.49, and the immediate sending to me of the two (2) notes in the amount of $2,500.00 and $690.59 that you held under the escrow agreement of December 18, 1962.

"Your duties were very definite in paragraph four of the escrow agreement.

"In order to avoid any misunderstanding we advised you by telegram on March 20 to make no disbursement until authorized."

April 1, 1963. Affidavit of Howard R. Ward attesting aforementioned documents to be genuine adding in a paragraph numbered 10: "that after receiving the notices not to disburse the escrow and to return the items placed in escrow as aforesaid, the defendant bank disbursed said escrow on or about April 1, 1963."

On November 2, 1965, the defendant filed in opposition to plaintiff's motion for summary judgment the affidavit of Edward Mendelson, one of the sellers, dated November 1, 1965. This affidavit adds to and corroborates the evidence offered by plaintiff hotel, except as to certain understandings of the sellers subsequent to March 18, 1965, which are not material in the circumstances. Exhibit "A" attached to this affidavit is a copy of an account entitled "Final Distribution of Mendelson-Sherwood Hotel Escrow" over the legend: "National Bank of Paulding O. E. White-Cashier." Exhibit "B" attached to this affidavit is a copy of a letter dated March 28, 1963, from the National Bank of Paulding addressed to "The Sherwood Hotel, Mr. Homer (sic) R. Ward, Sherwood, Ohio" and reading:

"Enclosed find warranty deed for lot No. 13 in the Village of Sherwood and a Bill of Sale for the entire stock and Fixtures of the Sherwood Hotel. The terms of the escrow agreement having been met, we have made distribution, of the monies left by you, according to the terms of the escrow agreement. The two notes mentioned in your letter have been returned to the Mendelsons as per agreement. The extension agreement was dated March 2, 1963 and received by us March 4, 1963 and was for a period of 30 days from that date."

On November 9, 1965, while plaintiff's motion was under consideration, defendant filed its motion for summary judgment along with documents, dated and described as follows:

November 1, 1965, copy of aforementioned affidavit of Edward Mendelson including mentioned exhibits thereto.

November 1, 1965. Copy of affidavit of attorney John E. Kissner, Defiance, that on December 26, 1963, on behalf of the

grantee he filed with the Recorder of Defiance County a deed from Edward Mendelson and Frances Mendelson to The Sherwood Hotel, Inc., which deed is recorded in Volume 178, page 684 of Deed Records.

March 22, 1963. Copy of letter from attorney William T. Hunt, Paulding, informing National Bank of Paulding that "the liquor permit of Frances L. Mendelson has been transferred to the Sherwood Hotel, Inc. The permit issued to the Sherwood Hotel, Inc. is No. 129317 and was issued on the 20th day of March, 1963."

The court now considers these motions together.

This evidence clearly establishes that defendant bank's authority to disburse anything under terms of the escrow agreement as amended in writing, expired at midnight, March 18, 1963. Where the words used clearly establish the agreement of the contracting parties, parol evidence cannot be utilized to show any contrary terms nor can the court remake a contract which the parties have freely entered into. Of course, while the escrow agreement remained in effect or subsequent to its expiration the parties thereto (plaintiff hotel corporation, defendant bank, and the sellers) could have, either in writing or orally, further amended it. Not the slightest evidence is offered that they ever did so. Consequently, the court must conclude that the bank distributed the escrow items without authority under the agreement.

We next consider if in the circumstances established by the evidence plaintiff has ratified the bank's unauthorized distribution of the escrow items as agent for both contracting parties, it being an ancient rule of law that ratification will, in general, relieve the agent from all responsibility on the contract, when he would otherwise have been liable. *Ballou* v. *Talbot* (1820), 16 Mass. 461.

The telegram of March 20, 1963, dispatched at 4:35 p. m., from Bowling Green certainly does not constitute ratification but is the negation thereof. Likewise the letter dated March 27, 1963, referring to paragraph 4 of the escrow agreement which became null and void and of no effect at midnight, March 18, 1963.

Nevertheless, because of that agreement the bank's possession of the escrow items continued and simultaneously there-

with the plaintiff hotel's application to receive transfer of the liquor permit continued in pending status before the Department of Liquor Control until effected on March 20, 1963, by issuance of a new permit to the transferee Sherwood Hotel, Inc., pursuant to Liquor Control Commission Regulation 14 (2) which authorizes such transfer of ownership of a liquor permit at the same location only "when such transfer is in connection with the bona fide sale of the business and assets of such permit holder." This transfer became complete and irrevocable at the will of the applicant (hotel) upon delivery in the mail at the close of the business day of said Department on Wednesday, March 20, 1963, at 4:45 o'clock p. m.

Practitioners before the Department of Liquor Control are well acquainted with the fact that any applicant for a new permit or the transfer of an existing permit may, up until the requested permit is issued and delivered by the Department of Liquor Control, either by physical act or deposit in the mails addressed to the new permit holder, merely at his request, cause his application to be cancelled and any action thereupon to be terminated.

It seems clear to the court that plaintiff could have, on March 19 and 20, 1963, withdrawn or cancelled its application for transfer of the permit and demanded return of its items in escrow. This it did not do. When the hotel permitted the transfer of the liquor permit to become effective it placed the bank, as agent for both parties with full knowledge of all material circumstances, in a position where it had three choices, viz: (1) to deliver the escrow items to the court in an interpleader action; or (2) distribute according to the agreement which had expired; or (3) return all items deposited to the depositors. It made the second choice. Plaintiff hotel by its failure to disaffirm fully and promptly in the circumstances so well known to it, ratified the bank's action in choosing this course. And this is no new legal principle. A principal (the hotel) having the right to disaffirm acts of an agent (bank) must do it promptly, and if not done within a reasonable time under the circumstances, ratification will be presumed. *Indianapolis Rolling Mill Co.* v. *St. Louis Ft. S. & W. R. Co.* (1887), 120 U. S. 256, 7 S. Ct. 542, 30 L. Ed. 639.

Here the circumstances, in part instigated by and well

known to plaintiff, obligated it to disaffirm with utmost promptness which it failed to do. Neither good conscience nor good law authorizes the hotel to permit its own action to succeed in depriving the sellers of their permit and then demand that they retain their premises without its benefits. In *Simpson* v. *Industrial Commission of Ohio* (1930), 36 Ohio App. 316, it was held in syllabus: "4. Principal, in ratifying unauthorized transaction of agents, cannot ratify beneficial acts and repudiate those which are detrimental."

The telegram of March 20, 1963, was ineffective because it came not only too late but did not specify that the fundamental condition (transfer of the liquor permit) had also failed and could not succeed. Neither did it tender the $600 or assert readiness of the buyer to deliver an inventory of such value, as called for in the agreement basic to the escrow terms. In the circumstances here the bank as escrow agent, was the common agent for two principals (the buyer and the sellers) and was not entitled to disregard the rights of either.

Nor can any principal (hotel) permit its agent (Ward) to cause an alteration in the position of a contracting party (sellers) which it is powerless to undo because there was no prompt and express disavowal while yet there was time. Such failure constitutes adoption of the agent's act. See *Marriott* v. *Columbus, S. & H. R. R. Co.* (1907), 16 Ohio Dec. 135, app. dis., 19 O. C. D. 166, aff., 76 Ohio St. 609.

Although escrow agents are answerable for damages resulting from the unauthorized distribution of escrow items, any damage here resulted only from plaintiff's own failure to properly assert its rights in time. As to this proposition there is no genuine issue as to any material fact and plaintiff is precluded from recovery. It follows that plaintiff hotel's motion for summary judgment must be overruled and that defendant's motion for summary judgment must be sustained.

Consequently, pursuant to the command of the statute, Section 2311.041 (B), Revised Code, judgment for the defendant is this day entered upon the journal.

*Judgment for defendant.*