Bertram Harnett, J.
This case involves a claimed breach of escrow duty by an attorney.
On November 14, 1962, the plaintiff, Kosinski, signed a building contract with Log Homes Inc. (called “ Log Homes ”) under which Log Homes agreed to construct a house on Kosinski’s land in Pennsylvania. Gallt, the defendant, was the attorney representing Log Homes. The signing took place in Gallt’s New York City law office, in the presence of Kosinski’s lawyer. The building contract provided, among other things, that it should “not be binding upon the Contractor unless approved by an officer of the Contractor.’? There was no officer of the contractor, Log Homes, present at the closing and, therefore, at the request of Kosinski’s attorney, an escrow letter was entered into between Kosinski and Gallt, under which Gallt agreed, among other things: “ I agree that I will withhold these checks from Mr. Strasser, of Log Homes Inc., until such times as the contract between you has been signed and returned to you.” Strasser was the president of Log Homes.
Concededly, a contract of November 14, 1962, signed by Strasser, was never delivered by Gallt to Kosinski and the checks nevertheless were delivered by Gallt to Strasser some time before the end of November, 1962. Without more, it would have appeared that the defendant Gallt breached his escrow agreement. However, more did take place.
Gallt claims that at the time he delivered the checks to Strasser, Strasser had informed him orally that he had mailed copies of a revised undated December agreement signed by Strasser to Kosinski and that this constituted a delivery satisfying the escrow. He argues that the escrow agreement meant the delivery of that which would finally emerge as the ultimate contract between the parties and was not limited to the specific contract document of November 14,1962. In the court’s opinion *126 that argument is invalid since the express language and obvious intent of the November 14, 1962 escrow agreement was the delivery of the document executed on that day. The document stated to be delivered to Strasser, which Gallt testified he believed had been delivered by Strasser to Kosinski, was demonstrably not the same agreement executed on November 14, 1962, and, while similar, differed from that agreement in material respects. Kosinski denied both receipt and signature of the undated December agreement. Strasser did not testify at the trial and no proof was adduced during the trial that any particular agreement was in fact delivered to Kosinski by either Gallt or Strasser.
In an alternative to compliance with the escrow terms, the defendant Gallt then argues that Kosinski never relied upon the delivery of the November 14, 1962 contract document and that he only sought to collect the escrow moneys from Gallt when it appeared that Log Homes was in financial difficulties some eight months later. It was not until June 17,1963 that the first written complaint of breach of escrow agreement or demand for refund of escrow moneys was made.
This court finds that between November 14, 1962 and June 17, 1963, when the first written claim was made for the breach of the escrow agreement, Kosinski abandoned the escrow agreement and waved strict compliance with its terms. He conducted himself as if he had a different arrangement with Log Homes. On November 19, 1962, for instance, Kosinski’s attorney wrote to Gallt setting forth a description of the land which was stated to be as follows: ‘1 This is the pertinent part of the description which you require for your contract to build the house.” The subsequent contract which Gallt claimed to have delivered to Kosinski, of which Kosinski denied receipt, had precisely that description in it, whereas the November 14, 1962 contract had no description. There was a series of telephone conversations between Kosinski and Strasser and Kosinski and Gallt which indicated that Kosinski was satisfied on some basis that he had at least a working agreement with Log Homes. Kosinski made several trips in connection with the building. In addition, there was detailed correspondence on specifications in November and December of 1962 and January of 1963. All of this is inconsistent with an assumption that the November 14, 1962 conclusions were to be governing. It is to be noted in this connection that the checks were apparently cleared through Kosinski’s bank in November of 1962, thus rendering it probable that Kosinski was put on notice from his December, 1962 bank statements that the escrow funds had been deposited.
*127 The performance of the condition of an escrow may be waived (20 N. Y. Jur., Escrow, § 24). While no New York case directly in point has been revealed, the concurring opinion in People v. Bostwick (32 N. Y. 445, 450) stated with reference to waiver of a condition upon which delivery of a bond was contingent: £ £ They could severally dispense with that condition, and permit a delivery which would make it the deed of those who so consented, but no one of them could dispense with the condition, so to affect any other of their number. But the paper must be left in the hands of some one, unless they all came into the presence of the auditor. It might have been committed to a stranger, under the same condition which was attached to it in the hands of Mr. Bostwiek, and if this had been done, and that person had violated his trust, it cannot be pretended, that the delivery by him would have been of any avail. It would be the common case of a delivery in escrow, with the condition unperformed.”
However, the question has been passed on in a number of other jurisdictions. The weight of authority overwhelmingly supports the proposition that the breach of a condition of delivery of an escrow can be ratified directly or indirectly by the escrow depositor. (Harris v. Geneva Mill Co., 96 So. 622 [Ala.] ; Wheelock v. Hondius, 74 Col. 400; Ward v. National Bank of Paulding, 5 Ohio Misc. 140; Home Owners’ Loan Corp. v. Ashford, 198 Okla. 481; Hansen v. Bellman, 161 Ore. 373; State v. Parker, 59 S. D. 500; Texas Reserve Life Ins. Co. v. Security Tit. Co., 352 S. W. 2d 347 [Tex.]; Lechner v. Hailing, 35 Wn. [2d] 903.)
This court further finds that G-allt did not keep any of the proceeds, and that he turned over the checks to Strasser.
In rendering this decisoin, the court is, nevertheless, constrained to note that the conduct of the defendant G-allt in the performance of his escrow undertaking reflected judgment and practice not at all commensurate with the experience of an attorney of 30 years of practice. However, notwithstanding his poor behavior, the court concludes that it is not just to penalize Gallt by making him a de facto insurer of Log Homes’ financial condition. Gallt’s undesirable conduct of his escrow duties was an incidental occurrence upon which the plaintiff may not capitalize under all of the circumstances involved in this case.
Judgment will be entered in favor of the defendant.